Well now we'll move to the In Re World Trade Center case. Let me just make sure counsel is here. Mr. Lopallo. Good morning, Your Honor. It's Christopher Lopallo. Can you hear me? Yes, I can. And can you hear and see us? Yes. Good. All right. And Ms. Warner? Yes, Your Honor. I'm here. Good. All right. And you can see and hear well? Yes. Okay. So, Mr. Lopallo, you have reserved two minutes of rebuttal, so that floor is yours. Thank you, Your Honors. May it please the Court, Christopher Lopallo, for the 124 individual appellants who all helped clean the Stuyvesant High School from the dust that infiltrated that building as a result of the collapse of the World Trade Center on September 11, 2001. The appellants sued the City of New York and the Battery Park City Authority for failing to provide them with the proper respiratory equipment and failing to warn them of the dangers of the World Trade Center dust at the Stuyvesant High School. The appellants are claiming respiratory injuries such as asthma and cancer as a result of their exposure. The first issue to address is whether or not the District Court erred in finding plaintiff's claims moot. Section 2E of the Final Settlement Agreement with the City is a judgment reduction clause. This clause is not applicable to appellants' claims for the following four reasons. One, it is premature since appellants have no judgments against the appellees. Two, the language of this clause is vague and ambiguous. Three, the WTC captive misled the plaintiffs in bad faith at the time of negotiating the Final Settlement Agreement. And four, the Battery Park City Authority's negligent acts are not covered by the indemnification provision of the lease they had with the Board of Education. Section 2E of the Final Settlement Agreement states, in relevant part, that nothing in this settlement agreement shall terminate plaintiff's rights, if any, against other defendants. During the time of negotiating, the World Trade Center captive took the position that the Battery Park City Authority's indemnity claims were meritless and that the Battery Park City Authority is not an insurer of the WTC captive. As a result, the Battery Park City Authority did not become a settling party and the Battery Park City Authority never contributed anything financially into the Final Settlement Agreement. Approximately eight years after the Final Settlement Agreement, on May 7, 2018, the WTC captive agreed to indemnify the Battery Park City Authority. The district court abused its discretion by denying the appellants their right to conduct discovery on the extrinsic evidence as to the Final Settlement Agreement. At the time of negotiating, the WTC captive told the appellants to continue their claims against the Battery Park City Authority in order to get more money from them for their share of their liability. The appellants relied on the WTC captive's position that their claims can continue against the Battery Park City Authority. Mr. LaPolla, before we get to questions of discovery, you just made assertions about what the captive insurance company told you during the negotiations. Now, that's something that your side of the table knows happened. Are there affidavits or evidence in the record, and could you refer me to where I would find them, that document these representations that you've just been reciting? Yes, Judge Lynch, I could refer you to the three declarations from appellants in the record. Specifically, it's in the joint appendix at pages, bear with me. For example, A-3824. 3824? 3824, through A-3868. There's three declarations in there. Basically, the claimants state that they relied on representations, not only from my office as their attorneys, but also directly from the WTC captive and the district court itself. Again, I want to be very clear about this. If these are declarations from the plaintiffs personally about things they were told by their lawyers, that's different than a statement by one of the lawyers about what he or she was told by the WTC captive insurer. I think the question is, where is the evidence that there was a representation that we're not going to indemnify, and so you're on your own, and we're on our own, and Battery Park City Authority is on its own in these negotiations. It's in the same declarations that I cited, Your Honor. In the declarations, the plaintiffs syndicated they were informed by the representative of the WTC captive, specifically Ms. Warner, who's arguing today, along with Judge Hellerstein in the district court, that their claims will continue against the Battery Park City Authority. They relied on that. Well, there may be claims against the Battery Park City Authority because I understand that these same claimants may also have been employed at other sites. I mean, there could be all kinds of reasons why they would have claims against the Battery Park City Authority, but we're talking specifically about the claims regarding Stuyvesant and the issue of indemnification, and I would think it would be a rather easy matter if there was a representation that we're denying indemnity for these claims and you still have a claim regarding Stuyvesant. If something like that was said, I would think that would be pretty easily stated by someone on your side of the table. It's a pretty straightforward thing, and I just think is it there or is it not there, but you've given us the page numbers and I guess I don't want to you search for the particular paragraph. We can look now that you've cited the page numbers to us. Thank you, Your Honor, and the appellants relied on that information when they decided to settle with the City of New York because the values of all of the appellant's settlements with the City and all the other locations. The appellants believe that their claims against the Battery Park City Authority will continue. If the appellants did not have valid claims against the Battery Park City Authority for their exposure at the Stuyvesant High School, they would have demanded more money from the city for their exposure at the Stuyvesant High School and demanded more money from other defendants for their exposures at the other locations. The appellants believe that the extrinsic evidence will show that the WTC captive understood and expected the appellant's claims to continue against the Battery Park City Authority. The unclean hands and bad faith negotiations on behalf of the WTC captive warrants the meaning of Section 2e to be explored through extrinsic evidence. I know you're running out of time. I wanted to ask one other thing. You mentioned four arguments and one that seems very significant to me is negligence on the part of the Battery Park City Authority because that would clearly defeat the indemnity at least as to any such negligence. Could you quickly identify just the sort of headings and what did they do that was negligent? So specifically in the lease that the Battery Park City Authority had with the Board of Education, it releases the Battery Park City Authority from liability for negligent and wrongful acts of attendance such as the Board of Education. However, the Battery Park City Authority remains liable to those who possess actions at war where the Battery Park City Authority incurred a negligent and tortious conduct themselves. I understand that's outside the indemnity. That's why I'm asking you to tell me just what did they do that was negligent? I understand the contract. I want to know what the evidence of negligence is. What did they do wrong? They failed to inspect the premises. They failed to warn the appellants of the atmospheric condition at the Stuyvesant High School. They failed to give the proper training to the appellants and they failed to make sure there was adequate compliance of the proper protective equipment and as a result... And they have a duty to do that when it is the city that is responsible for managing this entire project? Yes. Under the lease, specifically Article 17 of the lease states that the landlord can be liable for its own negligence and wrongful acts. But the acts are only liable for the negligent acts if they have a duty. I didn't warn those people either but I had no duty to. So what is the theory on why even though the city is responsible for managing the cleanup and handling the affairs of the building, where is the duty from the landlord located? In Article 19 of the lease, it gives the Battery Park City Authority the right to enter, the right to inspection, to determine whether or not the tenant is in compliance with its obligations to make repairs and make any necessary repairs to their premises. Okay, I got it. I understand what you're referring to now. Thank you. Thank you, Your Honor. I believe I am over unless Your Honor have any more questions. I have two minutes of rebuttal. That's correct. All right. Thank you. We'll now hear from Ms. Warner for 10 minutes. I think you're on mute still, Ms. Warner. May it please the court. Margaret Warner for the WTC Captive Insurance Company and with me at the virtual council table is Rachel Goldman for the Battery Park City Authority. The goal of every case is to ensure that there are thousands of plaintiffs, hundreds of defendants, a lead public entity defendant subject to follow-on indemnification claims, and a decade and a half of devotion of judicial resources. This court long ago approved the use of judgment reduction provisions for good reason. These provisions allow settling defendants further litigation and derivative liability. Judgment reduction provisions also preserve judicial resources. Finality was accomplished here after tireless efforts by council and by the district court. This landmark settlement agreement provided substantial recoveries for these plaintiffs and in turn relieved and resolved the City of New York for liability for all 9-11 related debris removal activities. The release signed by each of these plaintiffs incorporated the terms of the settlement agreement. The keystone to finality was the judgment reduction provision section 3 and 2e, excuse me. Through it the plaintiffs in exchange for the gave up any further recovery to claims made against an indemnity of the city. Okay can I just ask you to respond to Mr. LoPallo's statement basically that there was sort of fraud in the inducement in getting the plaintiffs to sign this thing. He referred us to spots in the record. I just took a quick look at them now and it looks like it's just plaintiffs saying I thought that I thought this and I wouldn't have signed the deal had I been told otherwise. But is there anything in the record that supports an inference that that the defendants took the position that the Battery Park City Authority was still fair game? There's absolutely nothing in the record Judge Sullivan that indicates any form of inducement, improper representation, misrepresentation or otherwise. In fact during the 22 months that the settlement was negotiated with counsel for these plaintiffs there was numerous discussion about the fact of potential indemnification claims not specifically with regard to Battery Park but indemnification claims against the WTC captive insurance and most specifically against the city. The record is devoid of any information that would indicate there was any misrepresentation. Well I'm looking at one of the affidavits that was referred to by Mr. Lopallo and he has an affidavit that has the line. One of the main reasons I decided to opt into the FSA was the fact that my attorneys, attorneys for the WTC captive and the court informed me that my case will continue against the non-settlement defendants including Battery Park City. Your Honor, absolutely there was a statement and it's contained in the final settlement agreement that these plaintiffs could pursue claims against non-insured entities of the WTC captive but there was never any representation about claims regarding the Battery Park City Authority. I'm sorry I didn't mean to interrupt. The issue it seems to me is where it's clear that of course the plaintiffs could pursue claims against Battery Park City Authority over anything they want to pursue the claim over. The question is whether the judgment reduction clause applies which in to such claims which in turn hinges on whether the Battery Park City Authority is in fact an of the city. So I guess what I would be looking for in the record is any representation. I think Mr Lopallo came very close to saying there was a specific representation that the WTC captive was taking the position that it was not. Is there in as far as you're aware any such evidence in the record that that position was taken by you or anybody else on your side of the negotiating table? Absolutely not. And the other thing you know that Mr. Lopallo spent time on, I realize he has other arguments as well. I found Judge Hellerstein's opinion a little perplexing on this because he seemed to treat this as two separate issues whether the claims were moot and then goes on and says but even if they weren't moot Battery Park City Authority was not negligence and no evidence of negligence there. I would have thought that because negligence takes you out of the indemnity that that's a necessary thing for the court to find in order to apply the reduction provision. But either way can you respond to Mr. Lopallo's argument that Battery Park City had an obligation, a duty to take steps to warn and protect the employees? So we're speaking specifically Judge Lynch in your question about Labor Law section 200 which is the negligence provision of the labor law involved. The other provision of the labor law 241.6 is the strict liability provision. So the issue with regard to negligence of BPCA is only under section 200 and the court found that there was absolutely no evidence in the record to demonstrate as is required under New York law that there was meaningful supervisory control by requirement to under Labor Law 200. There was no other evidence in the record that disputed the fact that Stuyvesant High School at all times was under the control of the city that BPCA had a right under the lease to enter but the law has held that a mere right to enter the premises does not provide sufficient meaningful supervisory control under Labor Law 200. So there is no basis in the record for this negligence option under the lease to come into effect. The plaintiff's complaint is that they haven't had a chance as I understand it to to get discovery on that and to prove their negligence claims. Your honor that's not true. The court of district court allowed discovery beginning in March 2012 by nine of these Stuyvesant plaintiffs with regard to issues relating to what happened at the high school and furthermore the lease was just was the subject of discovery and was not under the control of 2012. They had several years to undertake discovery to determine the facts and circumstances at Stuyvesant which they did. They took depositions and they got access to documentary information from BPCA. The fact is that the record is clear that they could not prove that there was any meaningful supervisory control or that there was construction going on at Stuyvesant. So the claim that they did not have adequate opportunity is is just flat wrong. Furthermore when the court converted the 12b6 motion to a rule 56 motion the court complied with the rules gave notice to the parties and allowed the parties to provide further evidence to support their further evidentiary support as they were required under rule 56 to support these claims and the court found as such when he ruled under rule 56. All right unless there are other questions then we'll we'll proceed then with rebuttal. Mr. Lopallo you have two minutes. Thank you your honors. In response to Ms. Warner's arguments that there has been substantial recovery remember that the plaintiffs the appellants here took into consideration that the claims against the Battery Park City Authority will continue and that determined the settlement values for all of the other settling defendants. Now these plaintiffs who are the appellants here relied on the representations of the WTC captive in not only deciding whether or not the city would settle with the city of New York and the other settling defendants but also took their position in reliance on making a decision as to whether or not they should continue their claims in court or withdraw their claims and pursue remaining compensation in the 9-11 Victims Compensation Fund. Since these plaintiffs have claims that continue they are not eligible to participate in the 9-11 World Trade Center Victims Compensation Fund like all of the other plaintiffs who settled with the city of New York in the final settlement agreement and it would be telling if their claims are now almost 10 years after they began litigating their claims that their claims at this time have no merit and are moot. The captive could have if they have if they were negotiating in good faith told the plaintiffs who are the appellants here that they were going to indemnify the Battery Park City Authority and they could have included them in the final settlement agreement way back in 2010 and if they indicated if they were going to be indemnifying them we simply would have just demanded more money into the settlement fund. Mr. LaPalla you heard before my question to Ms. Warner. I read a portion of an affidavit that pointed us to in your opening argument. Is there anything more than that or anything more specific than what I read? There is reference and I was trying to locate the correct site your honor. There was reference to a fairness hearing at the district court back in 2010 at the time that the final settlement agreement was going through judicial approval where the representative of the captive and the court specifically informed the plaintiffs that if they opt into the final settlement agreement their claims will continue against the non-settling defendants. Of course that's true. It says that right in the agreement itself. The question has to do with indemnity and is there any statement by anybody in this record where during the negotiation of the settlement agreement you know you said they could have represented that they were going to indemnify the city or that the city they had rights of indemnity against the city or whatever but you're saying you there were misrepresentations and I want to know where is the evidence of a misrepresentation where somebody said oh don't worry about this judgment reduction clause because we're not going to indemnify we've denied indemnity to Battery Park City. Is there something like that? Unfortunately not Judge Lynch and that's why I'm asking for discovery on extrinsic evidence because... Wait wait wait I'm sorry excuse me excuse me. This is not something you don't have to ask in discovery of the captive what they said to you if they said something like that to you you collectively the lawyers for the plaintiffs the plaintiffs themselves though I don't know how they would have any ex parte contact with the plaintiffs themselves outside a context where the lawyers were present there were people who were present who heard those misrepresentations if they were made and it would be a simple matter for evidence to be put into the record now if the evidence is in the record then maybe you'd go to the court and say we want to hear their side of this story next so we are entitled to discovery but you don't need discovery to establish that someone made a misrepresentation to you or at least to put in evidence in the record that that happened. Understood your honor besides the papers in this matter there's not a specific document that would demonstrate that the captive informed me and my office that they were not going to be indemnifying the Battery Park City Authority at the time of contracting. We've had numerous conversations over the years as we were trying to settle the claims with the Battery Park City Authority as to whether or not the captive will be indemnifying the Battery Park City Authority and on all such conversations we were informed numerous times by the captive that they will not be indemnifying the Battery Park City Authority that any claims of indemnity that they had were meritless at best. No one said that no one on your side of the table said that under oath in an affidavit before the district court when this issue was being litigated below is that right? Correct. Okay all right well let's end it there we're four minutes over the rebuttal but thank you both well argued we will reserve decision we'll now move to the third item on the calendar today that's United States versus Ramos. Let me make sure council is here for that Mr. Kuby. Yes Judge good morning. Good I can see you and hear you can you see me and hear me? I can see and hear all three of you or I could for a second and Judge Sullivan. Okay well you just died on me so I'm gonna yeah can I I'm gonna take a pause here and I'm gonna try to get on with my iPad because this seems like a very unstable connection. Thank you Judge. Thank you. We had full instructions from the presider about what we were going to do if one of the lawyers lost power but I guess we hadn't provided for what happens if the presider. I'm just gonna dial back. Well you are the second circuit after all so that shouldn't be happening. Do you hear me? Blinking on and off a little bit I heard half of your sentence. Now I can hear you. I can hear your honor and I'll admit you as soon as you dial back I'm just waiting for you to pop up. I'm dialing in now on my iPad and hopefully that will be better and then I'll disconnect here. No problem your honor. This better? Yes your honor. Yes Judge now I there's actually two of you on my screen which is a little frightening. Here we are. Okay.